IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1648-LPS |
| | ) | |
| 3SHAPE A/S, and 3SHAPE INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ALIGN TECHNOLOGY, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNTS XIII TO XVI OF 3SHAPE'S COUNTERCLAIMS**

OF COUNSEL:
Blair M. Jacobs
Christina A. Ondrick
Elizabeth Bernard
John S. Holley
Mark Consilvio
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC 20005
Tel: (202) 551-1700

Thomas A. Counts
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Tel: (410) 856-7000

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
jcastellano@shawkeller.com

OF COUNSEL:
Rebecca Weinstein Bacon
Reid M. Bolton
Mark L. Levine
Anastasiya Maione
Michael J. Valaik
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Tel: (312) 494-4400

John M. Hughes
Daniel C. Taylor
Jason C. Murray
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Tel: (303) 592-3100

Dated: September 25, 2020          *Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.  NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II. SUMMARY OF ARGUMENT ......................................................................................... 1

III. STATEMENT OF FACTS ................................................................................................ 2

IV. ARGUMENT ................................................................................................................... 4

    A.  The Forum Selection Clause Compels Dismissal of Counts XIII to XVI
Under the Doctrine of *Forum Non Conveniens* ...................................................... 4

        1.  The Forum Selection Clause Is Enforceable................................................. 5

        2.  The Forum Selection Clause Covers Counts XIII to XVI ........................... 6

        3.  There Are No "Extraordinary" or "Unusual" Circumstances to Justify
Disregarding the Forum Selection Clause ................................................... 8

    B.  The Court Does Not Have Subject Matter Jurisdiction Over Counts XIII to
XVI of 3Shape's Counterclaims ............................................................................11

        1.  The Court Does Not Have Original Jurisdiction Over the Counterclaims 12

        2.  The Court Does Not Have Diversity Jurisdiction Over the Counterclaims
.................................................................................................................... 13

        3.  The Court Does Not Have Supplemental Jurisdiction Over the
Counterclaims ........................................................................................... 13

V.  CONCLUSION............................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*AngioScore, Inc. v. TriReme Med., LLC*,
    666 F. App'x 884 (Fed. Cir. 2016) ................................................................. 13, 16

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*,
    571 U.S. 49 (2013) ...................................................................................... passim

*British Telecomms. PLC v. Fortinet Inc.*,
    424 F. Supp. 3d 362 (D. Del. 2019) ........................................................................ 5

*Callaway Golf Co. v. Acushnet Co.*,
    585 F. Supp. 2d 592 (D. Del. 2008) ...................................................................... 16

*Caterpillar Inc. v. Lewis*,
    519 U.S. 61 (1996) ............................................................................................... 13

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ............................................................................................. 12

*Collins v. Mary Kay, Inc.*,
    874 F.3d 176 (3d Cir. 2017) ........................................................................... passim

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ............................................................................................... 12

*Excentus Corp. v. Giant Eagle, Inc.*,
    No. C.A. No. 13-178, 2014 WL 923520 (W.D. Pa. Mar. 10, 2014) ...................... 10

*Foster v. Chesapeake Ins. Co.*,
    933 F.2d 1207 (3d Cir. 1991) ................................................................................. 5

*Harper Cty. Comm'n of Kan. v. Flat Ridge 2 Wind Energy LLC*,
    No. 14-1190-RDR, 2014 WL 4377750 (D. Kan. Sept. 4, 2014) ........................... 10

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ............................................................................................... 13

*Highway Equip. Co. v. FECO, Ltd.*,
    469 F.3d 1027 (Fed. Cir. 2006) ...................................................................... 14, 15

*Hisey v. Qualtek USA, LLC*,
    753 F. App'x 698 (11th Cir. 2018) ....................................................................... 10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ................................................................................. 14

*J.S. Alberici Const. Co. v. Mid-W. Conveyor Co.*,
  750 A.2d 518 (Del. 2000) ........................................................................... 7

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
  119 F.3d 1070 (3d Cir. 1997) .................................................................... 7

*Kleinman v. Betty Dain Creations*,
  189 F.2d 546 (2d Cir. 1951) ..................................................................... 16

*Lacey v. Cessna Aircraft Co.*,
  862 F.2d 38 (3d Cir. 1988) ....................................................................... 10

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ...................................................................................... 5

*MCI Telecomms. Corp. v. Teleconcepts, Inc.*,
  71 F.3d 1086 (3d Cir. 1995) .................................................................... 14

*MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*,
  65 F. App'x 844 (3d Cir. 2003) ................................................................. 8

*O'Brien v. Westinghouse Elec. Corp.*,
  293 F.2d 1 (3d Cir. 1961) ......................................................................... 13

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ............................................................................. 9, 10

*Reading Health Sys. v. Bear Stearns & Co.*,
  900 F.3d 87 (3d Cir. 2018) ........................................................................ 7

*Rohm & Haas Co. v. Chem. Insecticide Corp.*,
  171 F. Supp. 426 (D. Del. 1959) ............................................................. 16

*Rudisill v. Sheraton Copenhagen Corp.*,
  817 F. Supp. 443 (D. Del. 1993) ............................................................... 9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) .................................................................................. 11

*SSAB Ala., Inc. v. Kem-Bonds, Inc.*,
  C.A. No. 17-0175-WS-C, 2017 WL 6345809 (S.D. Ala. Dec. 12, 2017) ......... 11

*Stillwater Ltd. v. Basilotta*,
  No. CV 16-1895 FMO (SSx), 2019 WL 1960277 (C.D. Cal. Mar. 6, 2019) ......... 10

*TMF Tr. Ltd. v. M/T Megacore Philomena*,
  No. CV 17-09010 AGR, 2020 WL 3064447 (C.D. Cal. Mar. 24, 2020) ............... 10

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ................................................................................................ 14

*Yavuz v. 61 MM, Ltd.*,
    576 F.3d 1166 (10th Cir. 2009) .............................................................................. 10

**Statutes**

28 U.S.C. § 1331 ................................................................................................................ 12

28 U.S.C. § 1332 ................................................................................................................ 13

28 U.S.C. § 1338 ................................................................................................................ 12

28 U.S.C. § 1367 ........................................................................................................ 2, 13, 14

**Other Authorities**

2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 12.12 (2020) .................... 1

**Rules**

FED. R. CIV. P. 12 ............................................................................................................ 1, 2

## I.      NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement case that has been pending since 2017. This case has been stayed multiple times, first for proceedings in the International Trade Commission, D.I. 19, and then for *inter partes* review, D.I. 55 at 1. The second stay lifted on July 18, 2020. *Id.* Plaintiff Align Technology, Inc.'s First Amended Complaint accuses Defendants 3Shape A/S and 3Shape, Inc. of infringing patents related to intraoral scanners. D.I. 92.

In its recently-filed Answer and Counterclaims, D.I. 97, 3Shape introduces four counterclaims that are wholly unrelated to Align's patent infringement claims. These counterclaims—Counts XIII to XVI, asserting breach of contract and associated business torts—allege that Align used information it received pursuant to the "Scanner Agreement" to target marketing and promotions to 3Shape customers. The Scanner Agreement is a 2015 contract in which Align agreed to accept scans from 3Shape's Trios scanners for Invisalign clear aligners. These four counterclaims should be dismissed on two independent grounds.[1]

## II.     SUMMARY OF ARGUMENT

1.      The Court should dismiss 3Shape's counterclaims under the doctrine of *forum non conveniens*. All of these counterclaims arise out of the parties' relationship under the Scanner Agreement. But 3Shape never mentions that the Scanner Agreement includes an unambiguous forum selection clause requiring that "any dispute arising out of or in connection with th[e] Agreement (including any non-contractual disputes or claims)" must be decided by the "courts in Denmark." D.I. 97, Ex. A § 18. Where a forum selection clause mandates a foreign forum, *forum*

---

[1] Because Align is moving to dismiss some of the counts in 3Shape's counterclaims, Align will serve its answer to the remaining counterclaims after the Court resolves this motion. A partial motion to dismiss like this one extends the time to respond to 3Shape's entire pleading. FED. R. CIV. P. 12(a)(4); 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 12.12 (2020).

*non conveniens* dismissal is required in all but "the most 'unusual' and 'extraordinary' circumstances." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017) (quoting *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62, 64 (2013)). Here, there are no "unusual" or "extraordinary" circumstances that would warrant disregarding the forum selection clause negotiated by Align and 3Shape, both sophisticated parties.

2.      3Shape's counterclaims are also subject to dismissal because the Court lacks subject matter jurisdiction over them. *See* FED. R. CIV. P. 12(b)(1). The claims do not arise under federal law, and complete diversity is lacking because Align (the counterclaim defendant) and 3Shape, Inc. (one of the counterclaim plaintiffs) are both citizens of Delaware. The counterclaims do not meet the requirements for supplemental jurisdiction, which 3Shape has not even pled, because the counterclaims are not "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

## III.   STATEMENT OF FACTS

In this case, Align accuses 3Shape of infringing Align patents related to intraoral scanners that use light to capture an image of a three-dimensional structure, such as a patient's teeth. D.I. 92, Exs. 1-4. Align's complaint alleges that 3Shape's Trios intraoral scanners infringe the Align patents. *Id.* ¶¶ 33-88.

In 3Shape's Answer and Counterclaims, 3Shape asserts four counterclaims that have nothing to do with Align's patent infringement claims. D.I. 97. Counts XIII to XVI of the counterclaims arise out of the Scanner Agreement between Align Technology, Inc. and 3Shape Trios A/S signed in December 2015. *Id.* ¶ 12 & Ex. A. The Scanner Agreement sets forth technical and other requirements necessary for Align to accept digital scans from 3Shape's Trios

scanners for Align's Invisalign treatment. *Id.* Invisalign is the leading brand of clear aligners that straighten a patient's teeth without the need for wires and brackets like traditional braces.

The Scanner Agreement provides that either party can terminate the agreement either "for convenience" or "for cause" with a minimum amount of notice. D.I. 97, Ex. A §§ 2.2 & 2.3. Align exercised its contractual right to terminate the Scanner Agreement and stopped accepting scans from Trios scanners in the United States as of January 2018. *Id.*, Counterclaims ¶¶ 13-14.

The Scanner Agreement contains a choice-of-law and forum-selection clause that provides as follows:

> The validity, interpretation, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of Denmark. This Agreement and any dispute or claim arising out of it or in connection with it or its subject matter of formation, validity or termination (including non-contractual disputes or claims) shall be governed and construed in accordance with the laws of Denmark. ***Each Party irrevocably submits to the exclusive jurisdiction of the courts in Denmark to settle any dispute arising out of or in connection with this Agreement (including any non-contractual disputes or claims).***

*Id.*, Ex. A § 18 (emphasis added). 3Shape does not cite the forum selection clause or the fact that the parties agreed all disputes "arising out of or in connection with th[e] Agreement" must be brought in the courts of Denmark.

3Shape filed counterclaims on behalf of three entities: 3Shape A/S, 3Shape Trios A/S, and 3Shape, Inc. *See* D.I. 97, Counterclaims ¶¶ 1-3. 3Shape's four counterclaims depend on the same basic allegation: that Align used information it obtained under the Scanner Agreement about doctors who submitted Invisalign cases using Trios scanners, and then provided those doctors with marketing materials and promotions for Align's iTero intraoral scanners.

- In Count XVI (Breach of Contract), 3Shape alleges that this conduct breached various provisions of the Scanner Agreement relating to the use of Confidential Information. D.I. 97 ¶¶ 52-114.

- In Count XIII (Unjust Enrichment), 3Shape alleges that Align was unjustly enriched by "gain[ing] access to 3Shape's Trios and end user's information" and "commercially exploiting this information to 3Shape's detriment." *Id.* ¶¶ 40-41.

- In Count XIV (Common Law Tortious Interference with Prospective Business Relations), 3Shape alleges that Align used "confidential information obtained during the Trios to Invisalign interface" to "identif[y] Trios owners" and "interfere[] with 3Shape's business relationships by targeting and offering 3Shape's customers significant discounts on Align's iTero scanners." *Id.* ¶¶ 44-45.

- In Count XV (Unfair Competition), 3Shape alleges that Align's use of information about certain Invisalign customers who used Trios scanners to offer discounts on Align's iTero scanners "constitute[s] common law unfair competition." *Id.* ¶¶ 48-51.

All of these claims reflect the same basic allegation that Align improperly used confidential information obtained under the Scanner Agreement.

## IV.   ARGUMENT

### A.   The Forum Selection Clause Compels Dismissal of Counts XIII to XVI Under the Doctrine of *Forum Non Conveniens*

Counts XIII to XVI of 3Shape's counterclaims should be dismissed under the doctrine of *forum non conveniens.* 3Shape agreed to a forum selection clause that requires disputes "arising out of or in connection with" the Scanner Agreement be litigated in Denmark. D.I. 97, Ex. A § 18. "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*" *Atlantic Marine*, 571 U.S. at 60. When an enforceable forum selection clause covers the claims at issue, the claims must be dismissed in all but "the most 'unusual' and 'extraordinary' circumstances." *Collins*, 874 F.3d at 186 (quoting *Atlantic Marine,* 571 U.S. at 62, 64). There can be no doubt that the forum selection clause negotiated by these sophisticated parties is enforceable, or that its plain language (covering any claims "arising in connection with" the Scanner Agreement, expressly including non-contract

claims) covers Counts XIII to XVI of 3Shape's counterclaims.[2] Nor are there any "extraordinary circumstances" that would justify disregarding the parties' selection of a Danish forum—3Shape's home country. These claims should be dismissed.

### 1.    The Forum Selection Clause Is Enforceable

Forum selection clauses are "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).[3] To show that "[a] forum selection clause is unreasonable," 3Shape must "make a 'strong showing' *either* that the forum thus selected is 'so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court,' *or* that the clause was procured through 'fraud or overreaching.'" *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *M/S Bremen*, 407 U.S. at 15, 18). Given that the Scanner Agreement specifies 3Shape's own home forum of Denmark and that these claims can be litigated there, *see* D.I. 97, Counterclaims ¶¶ 1-2, 3Shape cannot make the "strong showing" required to set the clause aside.

---

[2] Unlike 3Shape's counterclaims, Align's patent infringement claims are not covered by the forum selection clause because they exist independent of the Scanner Agreement and do not "aris[e] . . . in connection with" that agreement. Even if the forum selection clause applied to such claims, however, *forum non conveniens* dismissal of the patent claims would not be appropriate because foreign courts lack jurisdiction to decide cases arising under U.S. patent law. *See British Telecomms. PLC v. Fortinet Inc*., 424 F. Supp. 3d 362, 369 (D. Del. 2019) (denying motion to dismiss U.S. patent infringement claims for *forum non conveniens* because, even assuming forum selection clause applied to such claims, defendant had "failed to demonstrate that an English court would have jurisdiction over Plaintiffs' patent claims").

[3] Courts in the Third Circuit apply federal law to determine whether forum selection clauses should be enforced. *See Collins*, 874 F.3d at 181.

### 2.    The Forum Selection Clause Covers Counts XIII to XVI

Because the forum selection clause encompasses "any dispute arising out of or in connection with this agreement (including any non-contractual claims and disputes)," D.I. 97, Ex. A § 18, Counts XIII to XVI of 3Shape's counterclaims fall under its purview. The counterclaims allege that the parties entered into the Scanner Agreement "to promote interoperability between 3Shape's Trios and Trios 3 intraoral scanners and related software and technology and Align's Invisalign clear aligner workflows." *Id.*, Counterclaims ¶¶ 12-14. Each of the counterclaims hinges on allegations that Align used confidential information that it obtained pursuant to the Scanner Agreement during the course of the contractual relationship:

- **Count XIII (unjust enrichment)** alleges that "3Shape conferred a benefit on Align by allowing interoperability between 3Shape's Trios intraoral scanner and Align's Invisalign workflow" under the Scanner Agreement, and that Align "unjustly retained this benefit," "exploit[ing]" the contract "to gain access to 3Shape's Trios and end user's information without 3Shape's permission." *Id.*, Counterclaims ¶¶ 39-41.

- **Count XIV (tortious interference) and Count XV (unfair competition)** allege that Align "us[ed] confidential information obtained during the Trios to Invisalign interface" set out in the Scanner Agreement to "intentionally and wrongfully interfer[e] with 3Shape's business relationships[.]" *Id.*, Counterclaims ¶¶ 44, 48.

- **Count XVI (breach of contract)** alleges that Align breached the confidentiality provisions of the Scanner Agreement by using confidential information for prohibited purposes. *Id.*, Counterclaims ¶¶ 52-107.

Of course, these claims would not exist absent the parties' contractual relationship because Align obtained access to the allegedly confidential information under the Scanner Agreement.

Under Danish law (which controls the interpretation of the Scanner Agreement, *see id.*, Ex. A § 18),[4] the forum selection clause would undoubtedly cover the counterclaims. *See* Ex. 1,

---

[4] The Court must apply Delaware choice-of-law principles to determine which law governs the interpretation of a forum selection clause. *See Collins*, 874 F.3d at 183-184. "Delaware courts

Declaration of Jacob Dirksen ("Dirksen Decl.") ¶¶ 7-9. Danish courts would apply a forum

selection clause like this one to "any claims that are related to the contract," regardless of

whether those claims are contractual or non-contractual in nature. *Id.* Because 3Shape's

counterclaims would not exist in the absence of the parties' contractual relationship, courts in

Denmark would interpret Section 18 of the Scanner Agreement to cover such claims. *Id.*

General principles of American contract law compel the same result. In a case involving a

forum selection clause that applied to claims "arising in relation to" a contract, the Third Circuit

held that the "ordinary meaning" of that phrase required only that "the origin of the dispute has

some logical or causal connection" to the contract. *John Wyeth & Bros. Ltd. v. CIGNA Int'l

Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (quotation and citation omitted). The nearly identical

phrasing in the Scanner Agreement's forum selection clause—covering "any" claims "arising out

of or *in connection with*" the contract—is similarly broad. *Cf. Reading Health Sys. v. Bear

Stearns & Co.*, 900 F.3d 87, 99 n. 50 (3d Cir. 2018) (noting that "the phrase 'arising out of' is

narrower in scope" than clauses "encompassing all actions 'arising in connection with,' 'relating

to,' or 'with respect to' an agreement."). 3Shape's allegations that Align used confidential

information obtained pursuant to the Scanner Agreement undoubtedly have "some logical or

causal connection" to that agreement. *John Wyeth*, 119 F.3d at 1074. And to put to rest any

lingering doubt, the forum selection clause here also expressly applies to "non-contractual claims

and disputes" as well as to claims for breach of contract. D.I. 97, Ex. A § 18.

---

will generally honor a contractually-designated choice of law provision so long as the
jurisdiction selected bears some material relationship to the transaction." *J.S. Alberici Const. Co.
v. Mid-W. Conveyor Co.*, 750 A.2d 518, 520 (Del. 2000). The Scanner Agreement has a material
relationship to Denmark because 3Shape is a Danish company. D.I. 97, Counterclaims ¶¶ 1-2.
Thus, Delaware courts would enforce the Scanner Agreement's choice-of-law clause, and apply
Danish law to the interpretation of the Scanner Agreement.

### 3.    There Are No "Extraordinary" or "Unusual" Circumstances to Justify Disregarding the Forum Selection Clause

In a typical *forum non conveniens* case, the Court applies a four-factor test: "(1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum." *Collins*, 874 F.3d at 186. However, the Supreme Court's decision in *Atlantic Marine* "instructs that a forum selection clause alters this analysis" by negating factors (1) and (3). *Id.*[5] In the presence of a forum selection clause, "a plaintiff's choice of forum in filing his or her lawsuit 'merits no weight,' and [the Court is] not to consider any argument about the parties' private interests—those 'weigh entirely in favor of the preselected [Danish] forum.'" *Id.* (quoting *Atlantic Marine*, 571 U.S. at 63-64). By agreeing to the forum selection clause, the parties "waiv[ed] the right to challenge the preselected forum as inconvenient[.]" *Atlantic Marine*, 571 U.S. at 64.

Hence, under *Atlantic Marine*, the only applicable factors are (1) the availability of an adequate alternative forum, and (2) public interest factors. *Collins*, 874 F.3d at 186. These two sets of factors "will overcome a forum selection clause in only the most 'unusual' and 'extraordinary' circumstances." *Id.* (quoting *Atlantic Marine,* 571 U.S. at 52, 64); *see also MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 847–48 (3d Cir. 2003) ("A valid forum selection clause should be given controlling weight in all but the most

---

[5] Although *Atlantic Marine* involved a domestic forum selection clause, and so analyzed the issue in the context of a motion to transfer venue under 28 U.S.C. § 1404(a), the Court noted that "the same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to state or foreign forums." *Atlantic Marine*, 571 U.S. at 49 n.8.

exceptional case." (quoting *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring))). This high bar is appropriate because, in "all but the most unusual cases," "'the interest of justice' is served by holding parties to their bargain." *Atlantic Marine,* 571 U.S. at 66. This case is not an "exceptional case" that would justify disregarding the parties' selection of a Danish forum.

*First*, Danish courts would provide an adequate and available forum. *See Rudisill v. Sheraton Copenhagen Corp.*, 817 F. Supp. 443, 446 (D. Del. 1993) (holding that "Denmark offers an adequate alternative forum"). "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981). Align would be amenable to process in the courts of Denmark, at a minimum because Align consented to the jurisdiction of the Danish courts to try any disputes related to the Scanner Agreement. D.I. 97, Ex. A § 18; Ex. 1, Dirksen Decl. ¶ 11 (explaining that Danish courts would enforce Align's consent to jurisdiction).

Although Denmark is a civil law country whose law differs somewhat from American law in the legal theories and remedies available for claims of misappropriation of confidential information, Denmark is nevertheless an adequate forum for 3Shape's counterclaims because it "permit[s] litigation of the subject matter of the dispute." *Piper,* 254 U.S. at 254 n.22; Ex. 1, Dirksen Decl. ¶¶ 12-15 (explaining that Danish law recognizes a variety of potential causes of action for misuse of confidential information, including breach of contract and statutory claims under the Danish Act on Trade Secrets).[6]

---

[6] Because 3Shape's counterclaims relate to conduct that took place on or after December 2017 (when Align terminated the Scanner Agreement), *see, e.g.,* D.I. 97 ¶¶ 86-94, 3Shape's claims would be within Denmark's 3-year statute of limitations period. Ex. 1, Dirksen Decl. ¶ 16. However, even if 3Shape's claims were time-barred in Denmark, dismissal would still be

*Second*, to the extent that public interest factors are implicated at all, they weigh in favor of dismissal. Even if the case were to remain here, 3Shape's counterclaims would be governed by Danish law as specified in section 18 of the Scanner Agreement. D.I. 97, Ex. A § 18. "[T]he need to apply foreign law point[s] towards dismissal," in light of the burden that it would place on the Court and the parties to litigate and decide issues of Danish law through expert evidence. *Piper*, 454 U.S. at 260; *see also Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 48 (3d Cir. 1988). Aside from that, as this is a dispute related to a contract between an American company and a Danish company, Denmark has at least as strong of a public interest in deciding this controversy as American courts do. *See, e.g., Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1182 (10th Cir. 2009) (holding that Swiss courts had a "greater interest in resolving" a case "involving contracts governed by its laws" than did American courts).

Finally, no extraordinary circumstances exist that would permit the Court to disregard the forum selection clause here. Numerous courts have granted *forum non conveniens* dismissal of counterclaims in cases, like this one, where the counterclaims (but not the original claims) were covered by a forum selection clause. *See, e.g., Excentus Corp. v. Giant Eagle, Inc.*, No. C.A. No. 13-178, 2014 WL 923520, at *1–11 (W.D. Pa. Mar. 10, 2014); *Harper Cty. Comm'n of Kan. v. Flat Ridge 2 Wind Energy LLC*, No. 14-1190-RDR, 2014 WL 4377750, at *1–3 (D. Kan. Sept. 4, 2014); *Stillwater Ltd. v. Basilotta,* No. CV 16-1895 FMO (SSx), 2019 WL 1960277, at *7–9 (C.D. Cal. Mar. 6, 2019); *TMF Tr. Ltd. v. M/T Megacore Philomena,* No. CV 17-09010 AGR, 2020 WL 3064447, at *4 (C.D. Cal. Mar. 24, 2020).

---

appropriate. *Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 705 (11th Cir. 2018). "[D]ismissal for *forum non conveniens* of a lawsuit brought by one who 'has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause' results in 'no injustice on the plaintiff' who 'lose[s] out completely [ ] through the running of the statute of limitations.'" *Id.* (quoting *Atlantic Marine*, 571 U.S. at 66 n.8).

3Shape will undoubtedly argue that there would be efficiencies associated with having these counterclaims tried in the same court as the remainder of this action. As discussed below, however, *infra* at 13-16, there is little if any meaningful overlap in the factual or legal issues presented by Align's patent infringement claims and Counts XIII to XVI of 3Shape's counterclaims, rendering any efficiencies minimal or nonexistent. Regardless, "courts in analogous circumstances have routinely found that *Atlantic Marine* calls for enforcement of the forum-selection clause, notwithstanding objections grounded in fears of duplicative litigation or judicial economy." *SSAB Ala., Inc. v. Kem-Bonds, Inc.*, C.A. No. 17-0175-WS-C, 2017 WL 6345809, at *1–7 (S.D. Ala. Dec. 12, 2017) (collecting cases). Such concerns fall far below the showing of "extraordinary" circumstances needed to overcome 3Shape's agreement to litigate these claims in Denmark.

### B. The Court Does Not Have Subject Matter Jurisdiction Over Counts XIII to XVI of 3Shape's Counterclaims

Even aside from *forum non conveniens*, Counts XIII to XVI are also subject to dismissal because the Court lacks subject matter jurisdiction over these counterclaims. The Court does not need to reach this ground for dismissal if it agrees with Align's first argument above and dismisses the counterclaims under *forum non conveniens*. Because *forum non covneniens* is "a non-merits ground for dismissal," the Court has discretion to dismiss on that ground without first addressing subject matter jurisdiction if the Court determines that "considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). If the Court deems it appropriate to reach the issue of subject matter jurisdiction, however, subject matter jurisdiction is lacking.

1.    **The Court Does Not Have Original Jurisdiction Over the Counterclaims**

3Shape's only allegation regarding the Court's subject matter jurisdiction is that the "Court has original jurisdiction over the subject matter of [its] counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202." D.I. 97, Counterclaims ¶ 6. None of these statutory provisions provides a basis for original jurisdiction over Counts XIII to XVI. Sections 2201 and 2202 relate to claims for Declaratory Judgment and are not relevant to Counts XIII to XVI. Section 1331 does not confer jurisdiction because Counts XIII to XVI do not "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Count XVI (Breach of Contract) alleges breach of the Scanner Agreement, which is governed by Danish law. And although 3Shape does not specify the governing law for Count XIII (Unjust Enrichment), Count XIV (Common Law Tortious Interference with Prospective Business Relations), or Count XV (Unfair Competition), those common-law claims assuredly do not arise under federal law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law."). To the contrary, as explained above, Counts XIII to XV are governed by Danish law pursuant to the choice-of-law provision in the Scanner Agreement.

Section 1338 does not provide original jurisdiction either. Counts XIII to XVI do not "aris[e] under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (holding that original jurisdiction under Section 1338(a) "extends only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims").

Nor does Section 1338(b) provide original jurisdiction over 3Shape's counterclaim for unfair competition because such a claim must be "joined with a substantial *and related* claim under the . . . patent . . . laws" in order for there to be jurisdiction. *Id.* § 1338(b) (emphasis added). "A related claim as used in the statute refers to one which may be proved by substantially the same facts." *O'Brien v. Westinghouse Elec. Corp.*, 293 F.2d 1, 12 (3d Cir. 1961). There must be a "common nucleus of operative fact between" the unfair competition claim and the patent-infringement claim. *AngioScore, Inc. v. TriReme Med., LLC*, 666 F. App'x 884, 887 (Fed. Cir. 2016). Here there is not. As explained in more detail below, *infra* at 13-16, 3Shape's unfair competition claim is entirely distinct from Align's patent infringement claims.

### 2.      The Court Does Not Have Diversity Jurisdiction Over the Counterclaims

Although 3Shape did not plead subject matter jurisdiction based on diversity, 28 U.S.C. § 1332, the Court does not have jurisdiction over Counts XIII to XVI under that provision.

There is no diversity jurisdiction because complete diversity is lacking. The diversity jurisdiction statute, Section 1332, "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Both Counterclaim Plaintiff 3Shape Inc. and Counterclaim Defendant Align Technology Inc. are Delaware corporations, D.I. 97, Counterclaims ¶¶ 3-4, meaning both companies are citizens of Delaware for purposes of diversity jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010) ("[A] corporation [is] a citizen of the State of its incorporation.").

### 3.      The Court Does Not Have Supplemental Jurisdiction Over the Counterclaims

The only other possible basis for subject matter jurisdiction over Counts XIII to XVI is supplemental jurisdiction under 28 U.S.C. § 1367, but 3Shape's counterclaims do not satisfy the requirements for supplemental jurisdiction. Section 1367(a) provides that "in any civil action of

which the district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution." 28 U.S.C. § 1367(a).

The Third Circuit has identified "three requirements [that] must be satisfied before a

federal court may exercise supplemental jurisdiction" under Section 1367: (1) "[t]he federal

claim must have substance sufficient to confer subject matter jurisdiction on the court"; (2) "[t]he

state and federal claims must derive from a common nucleus of operative facts"; and (3) "the

claims must be such that they would ordinarily be expected to be tried in one judicial

proceeding." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995)

(quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also Highway

Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1038 (Fed. Cir. 2006) ("For th[e] relatedness

requirement to be satisfied, 'the state and federal claims must derive from a common nucleus of

operative fact' such that they would ordinarily be expected to be tried in one proceeding"

(quoting *United Mine Workers*, 383 U.S. at 725)). "A district court may not assert supplemental

jurisdiction over state claims that are totally unrelated to the federal claims that form the basis of

the court's jurisdiction." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148

F.3d 283, 302 (3d Cir. 1998).

Counts XIII to XVI of 3Shape's counterclaims do not satisfy the second or third

requirements for supplemental jurisdiction. First, they do not derive from a common nucleus of

operative fact with Align's patent infringement claims, and second, they would not ordinarily be

expected to be tried in one judicial proceeding with the patent infringement claims. Align's

patent infringement claims turn on whether 3Shape's Trios intraoral scanners practice the claims

14

in the asserted patents. Counts XIII to XVI of 3Shape's counterclaims, by contrast, have nothing

to do with patents, patent infringement, or the technical aspects of the Trios scanners. Instead,

Counts XIII to XVI concern how Align allegedly used information about doctors who submitted

Invisalign cases by using Trios scanners under the Scanner Agreement. Indeed, 3Shape issued a

public press release in December 2017 in which it stated that "interoperability" of Trios scanners

with Invisalign under the Scanner Agreement "has absolutely *no legal link* to the patent

infringement allegations [by Align] against 3Shape." 3Shape Press Release (Dec. 19, 2017),

*available at* https://www.3shape.com/en/press/2017/3shape-responds-to-align-technology

(emphasis added).

 The factual elements of the claims are completely different, as is the governing law.

Indeed, Danish law governs Counts XIII to XVI under Section 18 of the Scanner Agreement,

while U.S. patent law governs Align's original patent infringement claims. These are not claims

that "would ordinarily be expected to be tried in one proceeding." *Highway Equip. Co.*, 469 F.3d

at 1038.

 Courts have held that claims similar to Counts XIII to XVI that are unrelated to patent

infringement claims do not fall within the supplemental jurisdiction of the federal courts. In

*Highway Equipment Co.*, for example, the Federal Circuit held that the district court had erred in

exercising supplemental jurisdiction over a state law claim "involv[ing] the alleged wrongful

termination of a dealership agreement" because that claim did not "derive[] from a 'common

nucleus of operative fact'" with the patent infringement claims. *Id*. The Federal Circuit explained

that, as between the two claims, "the respective instrumentalities are different, the products at

issue are different, the alleged acts are different, and the governing laws are different." *Id.* at

1039.

The same is true here. As in *Highway Equipment Co.*, there is essentially no factual or legal overlap between Align's patent-infringement claims and Counts XIII to XVI of 3Shape's counterclaims. *See also, e.g.*, *AngioScore*, 666 F. App'x 884 (court lacked subject matter jurisdiction over state law counterclaims for breach of fiduciary duty, aiding and abetting, and unfair competition because those claims did not "involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts" as patent infringement claims (quoting *Palmer v. Hosp. Auth. Of Randolph Cty.*, 22 F.3d 1559, 1563-64 (11th Cir. 1994)); *Callaway Golf Co. v. Acushnet Co.*, 585 F. Supp. 2d 592, 599 (D. Del. 2008) (court declined to exercise supplemental jurisdiction over breach of contract claim that had nothing "more than a 'tangential overlap of facts'" with patent claim (quoting *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988)); *Rohm & Haas Co. v. Chem. Insecticide Corp.*, 171 F. Supp. 426, 431 (D. Del. 1959) (court lacked subject matter jurisdiction over common law unfair competition counterclaim where "[t]he evidence required to support these charges of unfair competition will be completely different from the evidence on the patent issue"); *Kleinman v. Betty Dain Creations*, 189 F.2d 546, 549 (2d Cir. 1951) (court lacked subject matter jurisdiction over breach of contract claim that was not sufficiently related to patent claim).

## V.   CONCLUSION

Align respectfully requests that the Court grant this motion and dismiss Counts XIII to XVI of 3Shape's counterclaims.

Respectfully submitted,

/s/ *John W. Shaw*

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
jcastellano@shawkeller.com

OF COUNSEL:
Rebecca Weinstein Bacon
Reid M. Bolton
Mark L. Levine
Anastasiya Maione
Michael J. Valaik
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Tel: (312) 494-4400
rweinstein.bacon@bartlitbeck.com
reid.bolton@bartlitbeck.com
mark.levine@bartlitbeck.com
stacy.maione@bartlitbeck.com
michael.valaik@bartlitbeck.com

John M. Hughes
Daniel C. Taylor
Jason C. Murray
BARTLIT BECK LLP
1801 Wewatta Street
Suite 1200
Denver, CO 80202
Tel: (303) 592-3100
john.hughes@bartlitbeck.com
dan.taylor@bartlitbeck.com
jason.murray@bartlitbeck.com

OF COUNSEL:
Blair M. Jacobs
Christina A. Ondrick
Elizabeth Bernard
John S. Holley
Mark Consilvio
PAUL HASTINGS LLP
875 15th Street, NW
Washington, DC 20005
Tel: (202) 551-1700
blairjacobs@paulhastings.com
christinaondrick@paulhastings.com
elizabethbernard@paulhastings.com
johnholley@paulhastings.com
markconsilvio@paulhastings.com

Thomas A. Counts
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Tel: (410) 856-7000
tomcounts@paulhastings.com

Dated: September 25, 2020

*Attorneys for Plaintiff*