IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALIGN TECHNOLOGY, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>3SHAPE A/S and 3SHAPE INC.,<br><br>            Defendants. | C.A. No. 17-1648-LPS |
| ALIGN TECHNOLOGY, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>3SHAPE A/S, 3SHAPE TRIOS A/S, 3SHAPE INC., and 3SHAPE MANUFACTURING US, LLC,<br><br>            Defendants. | C.A. No. 18-1949-LPS |

## REPORT AND RECOMMENDATION

Pending before the Court are Plaintiff/Counterclaim Defendant Align Technology, Inc.'s ("Align's") Motions to Dismiss certain counterclaims asserted by 3Shape A/S, 3Shape Trios A/S, and 3Shape, Inc. (collectively, "3Shape"). (C.A. No. 17-1648, D.I. 103; C.A. No. 18-1949, D.I. 143.) As announced at the hearing on March 17, 2021, I recommend GRANTING Align's motions. My Report and Recommendation was announced from the bench as follows:

> This is my Report and Recommendation on two pending motions filed by Align. In Civil Action No. 17-1648, it's Align's motion to dismiss 3Shape's counterclaims XIII to XVI. (D.I. 103.) In Civil Action No. 18-1949, it's Align's motion to dismiss 3Shape's counterclaims XI to XIII. (D.I. 143.) Both motions seek to dismiss 3Shape's counterclaims under the doctrine of *forum non conveniens* and for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

I will not be issuing a separate written report, but I will issue a written document that incorporates a transcript of my oral ruling today. I want to emphasize before I begin that, while I'm not issuing a separate written opinion, we have followed a full process for making the decision that I'm about to state. Everything submitted and the oral arguments today have been carefully considered.

For the reasons I will discuss, I recommend that both of Align's motions be GRANTED and that the specified counterclaims be dismissed under the doctrine of *forum non conveniens*.

I will now summarize the relevant procedural history. The Court is aware that these cases are only two of many, many actions between these two parties in this Court and elsewhere. Align filed Civil Action No. 17-1648 in this Court on November 14, 2017. (C.A. No. 17-1648, D.I. 1.) The complaint alleged that 3Shape's Trios scanner infringed six of Align's United States patents. The case was stayed on January 23, 2018, and the stay was not lifted until October 15, 2019. (*Id.*, D.I. 26.) Align filed a first amended complaint on August 7, 2020, dropping one patent. (*Id.*, D.I. 92.) On August 28, 2020, 3Shape filed its responsive pleading, which contains a number of counterclaims. (*Id.*, D.I. 97.) The first ten counterclaims seek declarations of invalidity and noninfringement for each of the five patents-in-suit. The next counterclaim is styled Count XIII, and it asserts "unjust enrichment." Count XIV is styled "common law tortious interference with prospective business relations." Count XV is "unfair competition." And Count XVI is "breach of contract." On September 25, 2020, Align filed the pending motion to dismiss 3Shape's counterclaims XIII to XVI under the doctrine of *forum non conveniens* and for lack of subject matter jurisdiction. (*Id.*, D.I. 103.)

Align filed Civil Action No. 18-1949 on December 11, 2018. The complaint alleged that 3Shape's Trios scanner infringed five other U.S. patents assigned to Align. (C.A. No. 18-1949, D.I. 1.) Align filed a second amended complaint on May 18, 2020. (*Id.*, D.I. 72). 3Shape answered the second amended complaint and asserted counterclaims on June 1, 2020. (*Id.*, D.I. 73.) The [first ten] counterclaims seek declarations of invalidity and noninfringement of the patents-in-suit. Similar to the 17-1648 action, Count XI is a claim for "unjust enrichment," Count XII is for "common law tortious interference with prospective business relations," and Count XIII is for "unfair competition." On June 15, 2020, Align filed a motion to dismiss counterclaims XI, XII, and XIII on the basis that they failed to allege choice of law. (*Id.*, D.I. 74.) I issued a Report and Recommendation on January 8, 2021 in which I recommended

that the motion be denied, and Judge Stark adopted that Report and Recommendation today. (*Id.*, D.I. 205, 227.)  In the meantime, on October 6, 2020, Align filed a separate motion to dismiss those counterclaims.[1]  (*Id.*, D.I. 143.)  That motion incorporates by reference the majority of the arguments made in its opening brief to dismiss the parallel counterclaims in the 17-1648 action.

Now I'll summarize the most relevant facts.  Align markets Invisalign, a system of plastic aligners for straightening teeth.  Aligners are custom made, which requires an accurate representation of the patient's mouth.  Align markets an intraoral scanner that can be used to obtain the information needed to manufacture custom aligners.  3Shape markets an intraoral scanner called the Trios.

In December 2015, Align Technology, Inc. and 3Shape Trios A/S entered into a "Scanner Agreement."  (C.A. No. 17-1648, D.I. 97, Ex. A.)  Among other things, the Scanner Agreement allowed for scans generated by 3Shape's Trios scanner to be used to order Invisalign aligners.

The Scanner Agreement has a confidentiality provision that, in essence, says that the parties won't use each other's confidential information for any purpose other than to enable 3Shape's scanner to be compatible with Align's Invisalign process.  (*Id.* § 3.4.)  Paragraph 18 of the Scanner Agreement states as follows:

> **18.    GOVERNING LAW**
>
> The validity, interpretation, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of Denmark. This Agreement and any dispute or claim arising out of it or in connection with it or its subject matter of formation, validity or termination (including non-contractual disputes or claims) shall be governed and construed in accordance with the

---

[1] 3Shape's answering brief suggests that Align filed its motion too late.  (D.I. 151 at 3 ¶ 7.)  I disagree.  In general, there is no time limit within which a motion based on the doctrine of *forum non conveniens* must be made.  *See Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1173 (10th Cir. 2009) ("[A]n objection on *forum non conveniens* grounds is not waived by a defendant failing to raise the issue in its first responsive pleading."); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3828 (4th ed. 2021) ("In modern litigation, there generally is no time limit on when a motion to dismiss for *forum non conveniens* must be made.").  Moreover, this case is still in its early stages.

> laws of Denmark.  Each Party irrevocably submits to the exclusive jurisdiction of the courts in Denmark to settle any dispute arising out of or in connection with this Agreement (including any non-contractual disputes or claims).

(*Id.* § 18.)

It's fair to say that, by the end of 2017, the parties' relationship had deteriorated.  Align terminated the Scanner Agreement and the parties subsequently filed many, many patent infringement and antitrust suits against each other, including in this court and in the ITC.  In March 2018, 3Shape sued Align in Denmark, essentially seeking a declaration that it did not infringe Align's United States patents and that Align's district court and FTC cases violated the forum selection clause in the Scanner Agreement.  (*See* C.A. No. 17-1648, D.I. 120 at 6, Ex. 7.)

Subsequently, the parties, through their attorneys, made an e-mail agreement not to challenge jurisdiction or venue in any of the patent infringement or antitrust actions that were then pending in this Court.  (*Id.*, D.I. 121, Ex. 1.)  That agreement, from December 2018, states, in pertinent part:

> The parties agree to dismissal of the Danish action with prejudice.
> ….
> The parties agree that neither party shall challenge jurisdiction or venue in the pending patent infringement and antitrust actions in the United States District Court of Delaware, i.e. Civil Actions Nos. 17-cv-01646, 17-cv-01647, 17-cv01648, 17-cv-01649, 18-cv-00697, 18-cv-00886, 18-cv-01332.

(*Id.* ("2018 E-mail Agreement").)  The first four of those actions are patent infringement actions filed by Align against 3Shape.  The fifth and sixth are patent infringement actions filed by 3Shape against Align. And the last is an antitrust action filed by 3Shape against Align.

Align filed the 18-1949 action after the 2018 E-mail Agreement, and, as I mentioned earlier, the 18-1949 and 17-1648 actions have since moved forward and 3Shape subsequently asserted certain non-federal counterclaims.

In the pending motions, Align wants the Court to dismiss 3Shape's non-federal counterclaims. All of the challenged counterclaims arise from 3Shape's contention that, when Align accepted scans for Invisalign that were generated by 3Shape's scanners, Align learned the names of 3Shape's scanner customers and Align used that information to offer 3Shape's customers discounts on Align's scanners.

Count XIII of the 17-1648 action and XI of the 18-1949 action allege unjust enrichment. Those counterclaims essentially allege that Align was unjustly enriched by its access to and use of 3Shape's user information, which it gained as a result of the interoperability between 3Shape's scanner and Align's Invisalign workflow.

Count XIV of the 17-1648 action and XII of the 18-1949 action allege tortious interference with prospective business relations. Those counterclaims essentially allege that Align wrongly used 3Shape's confidential user information obtained as a result of the interoperability permitted by the Scanner Agreement

Count XV of the 17-1648 action and XIII of the 18-1949 action allege unfair competition. Those counterclaims are likewise based on Align's use of confidential information (obtained prior to the termination of the Scanner Agreement) to poach 3Shape's customers.

Count XVI of the 17-1648 action alleges that Align breached the Scanner Agreement when it used 3Shape's customer information.

Align argues that 3Shape's non-federal counterclaims should be dismissed under the doctrine of *forum non conveniens* because they are subject to the forum selection clause in the Scanner Agreement. I agree.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."[2] When a court receives a request to dismiss for *forum non conveniens* on the basis of a forum selection clause, it must confront two threshold questions: (1) does the forum selection clause apply to the claims at issue; and (2) is the forum selection clause enforceable.

---

[2] *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013).

5

Here, neither side argues that the clause is unenforceable,[3] but they do dispute whether the forum selection clause applies to the claims at issue.

In construing the forum selection clause, the court applies principles of contract law. Align, as the party seeking dismissal, bears the initial burden of showing that the clause applies to [the challenged counterclaims].[4]

Align has met its burden. This Court must apply the choice of law rules of Delaware, the forum state, to its interpretation of the Scanner Agreement. Delaware choice of law rules say that when parties to a contract have agreed that the contract is governed by a particular law, that law governs interpretation of the contract unless an exception applies. Here, the Scanner Agreement states that it is to be construed in accordance with the laws of Denmark.

In support of its contention that the courts in Denmark would interpret the Scanner Agreement to cover the challenged counterclaims, Align has submitted a declaration from Jacob Møller Dirksen, an attorney in Denmark.[5] In it, he states that Danish courts would interpret the forum selection clause to cover any claims related to the Scanner Agreement, regardless of whether they are contract or non-contract claims. (C.A. No. 17-1648, D.I. 104, Ex. 1

---

[3] In the Third Circuit, a forum selection clause must be enforced "unless the party objecting to its enforcement establishes (1) that it is the result of fraud or over-reaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989); *see also Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017).
To the extent that 3Shape suggests that litigating its counterclaims in Denmark would be inconvenient, I disagree. To demonstrate that a forum is so inconvenient as to be unreasonable, a litigant has a heavy burden. *Pride Enters., Inc. v. Lewes Steel Serv.*, No. 09-330-GMS, 2010 WL 1337683, at *4 (D. Del. Mar. 31, 2010). "[A] forum selection clause should be enforced unless 'trial in the contractual forum will be so gravely difficult and inconvenient that [the party] will for all practical purposes be deprived of [its] day in court.'" *Id.* (quoting *Dayhoff, Inc. v. H.J. Heinz, Co.*, 86 F.3d 1287, 1297 (3d Cir. 1996)). The record before the Court does not support a finding that 3Shape would be unreasonably inconvenienced by litigating in Denmark.

[4] *British Telecomms. Plc v. Fortinet Inc.*, 424 F. Supp. 3d 362, 368 (D. Del. 2019).

[5] *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

("Dirksen Decl.") ¶¶ 7-8.) He also opines that Danish courts would interpret the Scanner Agreement to cover the challenged counterclaims because all of those counterclaims relate to the Scanner Agreement and are all based on 3Shape's allegation that Align obtained and misused confidential information during the parties' relationship under that agreement. (*Id.* ¶ 9.)

I find that consideration of Mr. Dirksen's declaration is appropriate and that it is sufficient to satisfy Align's burden to show that the forum selection clause applies to the challenged counterclaims. And, for what it's worth, I think that a court applying Delaware law would interpret that clause the same way.

3Shape does not seriously contest that the forum selection clause, as written, applies to the challenged counterclaims. Rather, 3Shape's main argument in opposition is that Align agreed in the 2018 E-mail Agreement not to challenge jurisdiction and venue in this district. Again, that agreement states, "Neither party shall challenge jurisdiction or venue in the pending patent infringement and antitrust actions," and then it lists the 17-1648 action as one of the pending actions.

The parties dispute what is meant by "pending patent infringement and antitrust actions." Align argues that the 2018 E-mail Agreement covers only claims that were then pending in the listed actions. (C.A. No. 17-1648, D.I. 123 at 4.) 3Shape argues that the agreement applies to the [listed] actions generally and that the parties agreed not to challenge venue or jurisdiction for any claim that might later be raised in those actions. (*Id.*, D.I. 120 at 6-7.) [3Shape acknowledges that the 2018 E-mail Agreement does not reference the 18-1949 action. But it argues that it would be "inequitable" for the Court not to interpret the 2018 E-mail Agreement to cover the 18-1949 action because Align filed the 18-1949 action one day after the parties entered into the 2018 E-mail agreement.]

Both sides' briefs treat the 2018 E-mail Agreement as an independent contract.[6] But neither side addresses what law should be applied to that agreement and the agreement does not contain a

---

[6] At oral argument, 3Shape suggested that the 2018 E-mail Agreement amounted to a "waiver" of the Scanner Agreement's forum selection clause. 3Shape did not make that argument in its briefing; the waiver argument is therefore waived. Regardless, 3Shape's waiver argument is unpersuasive. (See C.A. No. 17-1648, D.I. 97, Ex. A (Scanner Agreement) at § 15 ("NO WAIVER").)

7

choice-of-law provision. Accordingly, I will assess it under Delaware law, consistent with Delaware choice of law principles.

"Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."[7] "Standing in the shoes of an objectively reasonable third-party observer, if the court finds that the terms and language of the agreement are unmistakably clear, then the court should look only to the words of the contract to determine its meaning and the parties' intent."[8] "If, after applying these canons of contract interpretation, the contract is nonetheless 'reasonably susceptible [to] two or more interpretations or may have two or more different meanings,' then the contract is ambiguous and courts must resort to extrinsic evidence to determine the parties' contractual intent."[9]

The [2018 E-Mail] Agreement on its face is unambiguous in that it does not cover the 18-1949 action. Accordingly, I conclude that Align never agreed not to challenge jurisdiction [or venue] over 3Shape's counterclaims in that action.

That leaves the 17-1648 action. If I look only to the terms and language of the 2018 E-mail Agreement, I cannot accept 3Shape's interpretation, which is essentially that Align agreed not to challenge jurisdiction [or venue] for any counterclaims that 3Shape might later attempt to add to that case, regardless of their relationship to the patent infringement claims that were then "pending." No reasonable party would agree to such a term.

I would come to the same conclusion even if I looked outside the four corners of the [2018 E-Mail] Agreement. The record before the court provides insight into the context in which this agreement was made, which is evidence of the parties' intent. That context supports Align's position that the agreement was not intended to cover any and all unrelated non-federal claims that the parties might later add to the pending patent infringement and antitrust actions.

---

[7] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (quoting *NBC Universal v. Paxson Commc'ns Corp.,* No. 650-N, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)).

[8] *Plaze, Inc. v. Callas*, No. CV 2018-0721-TMR, 2019 WL 1028110, at *4 (Del. Ch. Feb. 28, 2019) (quoting *Dittrick v. Chalfant*, 948 A.2d 400, 406 (Del. Ch. 2007)).

[9] *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 847 (Del. 2019) (quoting *Kaiser Alum. Corp. v. Matheson*, 681 A.2d 392, 395 (Del.1996)).

3Shape put forth a position at oral argument today about what the parties were intending to accomplish by the agreement, but it failed to cite to record evidence supporting that contention.

3Shape also argued today that some of the counterclaim plaintiffs are not bound by the forum selection clause. However, 3Shape failed to make that argument in its briefing, as counsel acknowledged during the hearing today. It is therefore waived.

In sum, I conclude that the Scanner Agreement forum selection clause covers 3Shape's counterclaims, and that the parties' 2018 E-mail Agreement does not apply to those counterclaims.[10]

Having considered the threshold question [of scope], I now move forward with the *forum non conveniens* analysis. In the Third Circuit, a court considers the following factors to determine if application of the doctrine of *forum non conveniens* is appropriate: "(1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum."[11]

In the *Atlantic Marine* case, the Supreme Court instructed that, when a forum selection clause applies to the claims, the analysis should be altered.[12] Specifically, the claimant's choice of forum does not matter, and the private interest factors are afforded no weight.[13] The court should consider only the second and fourth factors, which *Atlantic Marine* advises will overcome a forum selection clause in only the most "unusual" and "extraordinary" circumstances.[14]

---

[10] 3Shape argues that, if the Court accepts Align's interpretation of the 2018 E-mail Agreement, I should dismiss Align's U.S. patent infringement claims and require Align to bring those claims in Denmark. I disagree for multiple reasons, not the least of which is that 3Shape has not moved to dismiss Align's patent infringement claims.

[11] *Collins*, 874 F.3d at 186.

[12] *Atlantic Marine*, 571 U.S. at 62-63.

[13] *Id.* at 63-64.

[14] *Collins*, 874 F.3d at 186 (citing *Atlantic Marine*, 571 U.S. at 64).

The second factor supports dismissal here. The record suggests that Danish courts are an adequate alternative forum. Align is amenable to process there because it has agreed to the resolution of claims in that forum that arise out of or are connected to the Scanner Agreement. (C.A. No. 17-1648, D.I. 97, Ex. A § 18; Dirksen Decl. ¶ 11.) Moreover, the declaration submitted by Align supports its contention that 3Shape could assert Danish causes of action related to its allegation that Align misused its confidential information. (*See* Dirksen Decl. ¶¶ 12-15.)

3Shape disputes that Denmark is an adequate forum, but 3Shape did not submit anything to contradict Align's declaration. Rather, 3Shape appears to argue that Align failed to prove that a Danish court would apply state law to the specific counterclaims alleged by 3Shape. But even if I were to assume that 3Shape is correct about Align having the burden of proof on [the second factor],[15] Align has met it. The question is not whether Danish courts will apply state law to the parties' dispute, but whether Danish courts will hear the subject matter of the dispute. Moreover, 3Shape's argument ignores the fact that the parties agreed in the Scanner Agreement that Danish law will apply to disputes related to the agreement, which all of 3Shape's counterclaims are.

The fourth factor, the relevant public interest, is at best neutral. Again, the counterclaims are governed by Danish law. (*See* C.A. No. 17-1648, D.I. 97, Ex. A § 18.) And 3Shape is a Danish company. The Supreme Court has stated that public interest factors will rarely defeat a *forum non conveniens* motion, and they do not do so here.

I make two additional observations regarding factor four. First, while there is always an interest in avoiding a multiplicity of suits, this is not a situation where the parties are otherwise resolving their disputes in one litigation. As mentioned, these two cases are among the many brought by these parties against each other. 3Shape can hardly be heard to complain about having to litigate a separate case in a forum that it agreed to. Second, courts have granted *forum non conveniens* dismissals of counterclaims [in cases] where the

---

[15] *Compare British Telecomms.*, 424 F Supp. at 367 ("The defendant bears the burden of establishing that an adequate alternative forum exists."), *with Atlantic Marine*, 571 U.S. at 63 ("[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.").

10

defendant's counterclaims, but not the plaintiff's claims, were covered by a forum selection clause.[16]

Accordingly, I conclude that application of the doctrine of *forum non conveniens* is appropriate in this case and that the challenged counterclaims should be dismissed

Courts have authority to address *forum non conveniens* without first assessing jurisdiction.[17] Because I have concluded that the counterclaims should be dismissed on the basis of *forum non conveniens*, I do not reach Align's arguments that the Court lacks jurisdiction over the challenged counterclaims.

In sum, I recommend the following:

1. In Civil Action No. 17-1648, Align's motion to dismiss 3Shape's counterclaims XIII to XVI (D.I. 103) should be GRANTED. Counterclaims XIII to XVI should be dismissed under the doctrine of *forum non conveniens*.

2. In Civil Action No. 18-1949, Align's motion to dismiss 3Shape's counterclaims XI to XIII (D.I. 143) should be GRANTED. Counterclaims XI to XIII should be dismissed under the doctrine of *forum non conveniens*.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages.

---

[16] *See, e.g., Stillwater Ltd. v. Basilotta*, No. CV 16-1895 FMO (SSX), 2019 WL 1960277, at *8-9 (C.D. Cal. Mar. 6, 2019).

[17] *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("[A] court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.").

The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

      The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: April 19, 2021

                                                         Jennifer L. Hall
                                                         UNITED STATES MAGISTRATE JUDGE